## A91A0123. RHODES v. THE STATE.

(407 SE2d 442)

BEASLEY, Judge.

Defendant appeals his conviction for selling cocaine, OCGA § 16-13-30 (b), the nolle prosequi of a charge of possessing methamphetamine with intent to distribute, OCGA § 16-13-30 (b), and the denial of his motion for new trial. He enumerates seven errors.

On February 15, 1989, appellant was arrested when a co-defendant, Hayes, sold cocaine to an undercover narcotics officer. The appellant had driven Hayes to the site of the sale, was present during the transaction, and was observed by officers writing in a notebook. The notebook contained information about the manufacture of methamphetamine.

On February 23, appellant and the co-defendant were indicted for trafficking in cocaine, possession of methamphetamine with intent to distribute, and use of a communication facility in the commission of a felony. On March 20, a superseding indictment was returned which charged the defendants with sale of cocaine rather than trafficking, the crime lab having reported that the cocaine weighed 27.9 grams, less than the trafficking requirement of 28 grams. OCGA § 16-13-31 (a). At the calendar call on Friday, April 21, appellant stated he was not ready for trial because he had not been informed of the superseding indictment seven days before trial and because he had prepared only a technical defense based on the insufficiency of 27.9 grams for a trafficking offense. The court reset the case for Monday, April 24.

When the case was called on April 24, appellant requested a continuance, reclaiming insufficient time for preparation. The motion was denied. Appellant was convicted of the sale of cocaine and was acquitted of the use of a communication facility during the commission of a felony. OCGA § 16-13-32.3. The amphetamine count was not submitted to the jury. Appellant received a maximum sentence of 30 years, 20 years in confinement and the remainder on probation.

1. The first error asserted is the denial of a continuance. Appellant argues that he should be granted a new trial since, because of the

State's substitution of indictments, he did not receive the seven days' notice of trial he is entitled to under USCR 32.1 or the time to sufficiently prepare a defense mandated by the due process guarantees of the United States and Georgia constitutions.

"All applications for continuance are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice require." OCGA § 17-8-22. "A motion for a continuance predicated on the basis that counsel has not had sufficient time to prepare for trial addresses itself to the sound discretion of the trial judge," *Cantrell v. State*, 154 Ga. App. 725 (2) (270 SE2d 12) (1980), "and the refusal to grant a continuance will not be disturbed unless there is a clear abuse of discretion." *Young v. State*, 237 Ga. 852, 855 (230 SE2d 287) (1976).

In the exercise of discretion, the trial judge "has to consider the facts and circumstances of each case to determine what the ends of justice require," since "[a] statement by counsel for the defendant that he has not had sufficient time to investigate and prepare the defense is a mere conclusion." *Foster v. State*, 213 Ga. 601, 603 (1) (100 SE2d 426) (1957). The trial court considered the circumstances of this case, concluding that a charge of selling cocaine would be a lesser included offense of the trafficking charge and that an attorney, in preparing a defense to trafficking, would anticipate the necessity to defend the lesser included offense of sale.

The applicant for a continuance must show due diligence. OCGA § 17-8-20. The trial court's denial of the motion for a continuance was not a manifest abuse of discretion. *Mack v. State of Ga.*, 125 Ga. App. 639, 640 (2) (188 SE2d 828) (1972); *Young*, supra.

2. The second assigned error is the denial of Rhodes' motion for severance.

OCGA § 17-8-4 provides that defendants indicted for a non-capital felony "may be tried jointly or separately in the discretion of the trial court." "As a general matter, courts should grant severance 'whenever it appears "necessary to achieve a fair determination of the guilt or innocence of a defendant." ' " *Glover v. State*, 188 Ga. App. 330, 331 (373 SE2d 39) (1988). It sets out four factors and the further requirement that movant must show harm or prejudice from the failure to sever. Appellant's burden is to show "that any of the named criteria are applicable so as to prejudice his defense." *Causey v. State*, 192 Ga. App. 294, 297 (4) (384 SE2d 674) (1989).

Appellant argues that there was no direct evidence that he participated in the transaction but that his co-defendant's participation was clear, circumstances that place appellant in the position of having to point out to the jury, in an attempt to prove his own innocence, facts which would implicate his co-defendant. Appellant states in his brief that "[s]uch a tactic might well have worked to his detriment, if

the jury felt that his association with [co-defendant] under these circumstances implicated [appellant]."

Nothing appears in the record to demonstrate that this argument was urged at trial. It has been held that this court will not consider "issues and grounds for objection which were not raised and passed upon in the trial court," *Jefferson v. State*, 157 Ga. App. 324, 326 (2) (277 SE2d 317) (1981); *Kress v. State*, 195 Ga. App. 519 (2) (394 SE2d 139) (1990). Even considering the argument, it does not render the trial court's refusal to sever an abuse of its discretion. *Causey*, supra.

3. Appellant asserts error on the trial court's admission, after a *Jackson v. Denno* hearing, of certain statements he made in response to interrogation.

The evidence showed that the appellant was notified of his *Miranda* rights immediately upon arrest. The sheriff then drove appellant to the jail. The next day appellant was questioned by a detective who did not again advise or remind the appellant of his *Miranda* rights. He had been present when the warnings were given and Rhodes indicated he understood his rights. Appellant contends that he was entitled to be reminded or readvised of his rights prior to questioning, and that his statements should have been suppressed since they were not knowingly made.

The statements made by appellant are: (1) When asked why he was studying methamphetamine, he replied, "it was interesting." (2) When asked where he got the contraband, he stated that he had found a vial later determined to contain cocaine residue and mannitol "in a garbage dump."

Where an interrogation is continuous, or where there is a relatively short time span between the warnings and statements, reminding an accused of his *Miranda* rights is not required. See *Akers v. State*, 179 Ga. App. 529, 530 (346 SE2d 861) (1986); *Watson v. State*, 227 Ga. 698, 700 (1) (182 SE2d 446) (1971); *McKenzie v. State*, 187 Ga. App. 840 (371 SE2d 869) (1988).

Appellant relies upon *Bragg v. State*, 162 Ga. App. 264, 266 (1) (291 SE2d 112) (1982), where this court said that "[a]fter an individual in custody on criminal charges has been given the complete Miranda warnings, it is not necessary that subsequent incidents of questioning the arrested person be preceded by repetition of the complete warning if that full warning is reinforced prior to subsequent interrogation by reminding the individual in custody that he was previously advised of his rights." See *Anglin v. State*, 244 Ga. 1, 3 (2) (257 SE2d 513) (1979) (overruled on other grounds *Welch v. State*, 254 Ga. 603, 606 (331 SE2d 573) (1985)); *Moten v. State*, 231 Ga. 642, 643 (203 SE2d 527) (1974).

In *Hubbard v. State*, 187 Ga. App. 542, 543 (4) (371 SE2d 116)

(1988), a new trial was ordered because the prior warning was not reinforced at the time the incriminating statement was made.

In *Gregg v. State*, 233 Ga. 117, 125 (4) (210 SE2d 659) (1974), the Supreme Court held that *Miranda* warnings had not become "stale" after a period of 14 hours. In *Watson*, supra, the Supreme Court found that a second statement made seven hours after the first statement constituted continued interrogation. The totality of the circumstances support the determination that the statements were voluntarily made.

Even if error, the admission of the statements was harmless. " 'A constitutional error is harmless, if there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." [Cit.] The test is not "whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of," id., but whether the evidence complained of may have influenced the factfinder's deliberations. [Cits.]' " *Vaughn v. State*, 248 Ga. 127, 131 (281 SE2d 594) (1981). *Ellis v. State*, 256 Ga. 751, 755 (353 SE2d 19) (1987). Given the limited nature of these statements, there is no reasonable possibility that their admission might have contributed to the conviction.

4. Rhodes enumerates error in the denial of his motion for mistrial and in failing to take any curative action after he claimed that jurors had the opportunity to see him in handcuffs while being brought to court by a sheriff's deputy.

Defendant has a right to appear for trial free from all shackles and bonds, and in an atmosphere free of partiality. *McKenzey v. State*, 138 Ga. App. 88 (225 SE2d 512) (1976) (then physical precedent). "However, the mere fact that a handcuffed defendant is seen by jurors or prospective jurors is not a ground for the automatic grant of a challenge to the array of jurors or of a mistrial. [Cits.]" *Carter v. State*, 155 Ga. App. 840, 841 (273 SE2d 417) (1980). There are circumstances which will justify the jury's seeing the defendant handcuffed, such as being brought from jail to the courtroom. *Gates v. State*, 244 Ga. 587, 593 (2) (261 SE2d 349) (1979).

No evidence was ever presented that established that Rhodes had in fact been seen by jurors while handcuffed. He refers to the "opportunity" jurors had to view him, saying they had been *able* to view him but never claiming they actually did. The trial court inquired into the circumstances involved in the alleged "viewing," and after listening to all parties and a police officer who had brought Rhodes to court, denied the motion for mistrial. Beyond this, the court was never asked to question the jurors, although counsel for both defendants mentioned to the court that it might be necessary to voir dire the jury. This necessity was not repeated or asserted, and no request was made for curative instructions.

The mere possibility that jurors might have had an opportunity to observe appellant in handcuffs does not mandate a mistrial. See *Keith v. State*, 186 Ga. App. 273, 274 (1) (367 SE2d 255) (1988). The burden rests on the one asserting error to show it affirmatively by the record. *Shorter v. State*, 193 Ga. App. 217, 218 (3) (387 SE2d 427) (1989). The factual determination is upheld because it is, at the least, not clearly erroneous. *Clark v. State*, 189 Ga. App. 68 (2) (374 SE2d 783) (1988).

5. The next question is whether it was error to allow the State to introduce evidence that Rhodes was on probation.

At the time of his arrest, appellant was receiving a notebook which contained such matters as: chemical descriptions of ethers used in the manufacture of methamphetamine; price quotations from chemical companies for bulk quantities of ether; chemical descriptions of and formulas for methamphetamines and amphetamines; handwritten formulas of compounds related to methamphetamine, ephedrine, "speed" and pseudoephedrine; the word "mannitol" written on a piece of paper; and other references to controlled substances. Last was a travel permit issued to Rhodes by the United States District Probation Office.

Appellant claims that the introduction of the travel permit, which showed he was a convict, constituted an inadmissible introduction of his bad character into evidence. OCGA § 24-2-2. He argues that the notebook contained information which would accurately identify him without the travel permit, such as notepaper with Oklahoma addresses thereon and papers relating to cattle breeding.

The State points out that the travel permit was needed to establish appellant's connection with the notebook because appellant had denied ownership of a briefcase found in his truck which contained material similar to that found in the notebook, and that the only item in the notebook containing Rhodes' name was the travel permit.

"Material evidence is not rendered inadmissible merely because it incidentally places a defendant's character in issue. [Cit.]" *Dampier v. State*, 245 Ga. 427, 433 (265 SE2d 565) (1980). But "there [must be] some logical connection between the two, from which it can be said that proof of the one tends to establish the other. [An exception to exclusion is where the evidence] . . . may bear upon the question of the identity of the accused, or articles connected with the offense. . . ." *Cawthon v. State*, 119 Ga. 395, 408 (46 SE 897) (1903).

In *Bethea v. State*, 172 Ga. App. 598 (324 SE2d 202) (1984), the appellant enumerated as error the admission into evidence of a document which revealed that appellant was on parole at the time of a burglary. It was admissible because it was a necessary link between appellant and the means of transportation he was said to have used to reach the burglarized store. *Lumpkin v. State*, 182 Ga. App. 505 (356

SE2d 238) (1987), held admissible a parole grid sheet found in the appellant's wallet, which was found in the victim's truck, because it connected appellant to the scene of the crime and identified him as one who had been involved in the crime, even though the wallet also contained appellant's birth certificate.

Given that the travel permit was the only document containing appellant's name, that other evidence to prove ownership would be at best speculative and circumstantial, and that appellant denied ownership of a briefcase containing similar material, introduction of the travel permit was properly allowed.

6. Appellant contends the court erred by refusing to direct a verdict of acquittal as to the charge of possession of methamphetamine with intent to distribute.

At the beginning of trial, the State chose not to proceed on this count and no evidence of possession of methamphetamine was presented. Appellant moved for a directed verdict of acquittal "or in the alternative, for the entry of a nol-pros [sic]" on this count at the close of the case. The court refused to direct a verdict of acquittal or enter a nolle prosequi, instead masking it before it went to the jury.

An order of nolle prosequi was entered after the trial.

OCGA § 17-9-1 (a) provides that "[w]here there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' as to the entire offense or to some particular count or offense, the court may direct the verdict of acquittal to which the defendant is entitled under the evidence and may allow the trial to proceed only as to the counts or offenses remaining, if any."

"[W]hen there is no conflict in the evidence and it clearly demands a verdict of acquittal as a matter of law there is a *duty* upon the trial judge to grant a motion for a directed verdict of acquittal and his failure to do so will constitute reversible error on appeal." *Merino v. State*, 230 Ga. 604, 605 (198 SE2d 311) (1973).

An entry of nolle prosequi is not equivalent to a verdict of acquittal. *McGahee v. State*, 133 Ga. App. 964, 966 (213 SE2d 91) (1975): "A nolle prosequi is a cessation of prosecution for the nonce, but it may spring into life again and be continued again with all the furvor and energy at the command of the prosecuting officers. A new indictment may be returned or a new accusation may be filed, and the earlier nolle prosequi can in no sense be pleaded as autrefois acquit or former jeopardy, or res judicata. [Cit.]"

There was no evidence to support the methamphetamine count, mandating a directed verdict. However, by expressing equal satisfaction with either remedy, appellant left an option which was satisfied by the entry of the nolle prosequi. One cannot complain of a ruling which his own conduct procured, *McDaniel v. State*, 248 Ga. 494, 495

(2) (283 SE2d 862) (1981), and the issue is now moot. *Richardson v. State*, 87 Ga. App. 397 (1) (74 SE2d 15) (1953).

7. Appellant contends that he was sentenced as a recidivist by the State's oral request under OCGA § 17-10-7 (a), and that this was error because the appellant had not been indicted as a recidivist. He cites *Brown v. State*, 144 Ga. App. 509, 510 (241 SE2d 621) (1978), for the proposition that "[i]t is well settled that 'one must be indicted as a recidivist in order to impose recidivist punishment.' [Cits.]"

However, as noted in *Brown*, former convictions may be introduced at the presentence hearing in "aggravation of punishment," and a trial court has discretion in imposing sentence within the scope of the punishment prescribed. The court observed that it did not regard the trial judge's statement as an unqualified application of recidivist punishment since the transcript did not show that punishment was so applied but instead showed it was based on defendant's record.

Rhodes did have notice of aggravating circumstances, and the court never stated it was imposing recidivist punishment. Because it is error to disclose to the jury prior convictions before a determination of guilt, "the only purpose for their inclusion in the indictment is to give to the accused unmistakable advance warning that the prior convictions will be used against him at sentencing." *State v. Hendrixson*, 251 Ga. 853, 854 (310 SE2d 526) (1984). "[I]t is not required that the prior convictions be included in the indictment but only that the accused receive notice of the state's intention to seek recidivist punishment and of the identity of the prior convictions." *Favors v. State*, 182 Ga. App. 179 (355 SE2d 109) (1987). This applies to OCGA § 17-10-7; *Anderson v. State*, 176 Ga. App. 255, 256 (335 SE2d 487) (1985).

The sentence, to which no objection was interposed, is within the statutory limit, OCGA § 16-13-30 (d), and within the trial court's discretion, so it will not be disturbed. *Monroe v. State*, 250 Ga. 30, 36 (7) (295 SE2d 512) (1982).

*Judgment affirmed. Banke, P. J., concurs. Carley, J., concurs in Divisions 1, 3, 4, 5, 6, 7, and in the judgment.*

DECIDED JUNE 26, 1991.

*Edwards & McLeod, Jennifer McLeod*, for appellant.
*Frank C. Winn, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.