## S96A1124. STERLING v. THE STATE.
### (477 SE2d 807)

BENHAM, Chief Justice.

Jeffrey Sterling appeals his convictions of malice murder, aggravated assault, kidnapping, and burglary.[1]

The evidence presented at trial indicated that on the night that the crimes were committed, Margaret Chambers and Ernest Douglas were at Douglas's house using drugs. During this time, Sterling and his brother, Rico, who lived nearby, knocked on the front door. When Douglas answered the door, Sterling and Rico pushed him back into the house, took him to the kitchen, as Chambers followed, and demanded money that Douglas apparently owed Sterling. Douglas requested to make a phone call to his brother, and, after letting him make a call, Rico snatched the telephone/answering machine off the wall and tucked it under his arm.

Sterling and Rico then forced Chambers and Douglas outside into the woods. Douglas was fatally shot in the mouth with a .45 caliber pistol, and Chambers survived shots to the wrist and face. When police arrived at the scene, Chambers identified Sterling as one of the assailants and indicated the house in which he lived. Pursuant to a search of the home, Douglas's telephone was found in a bedroom closet and .45 caliber bullets were found in the same bedroom.

1. We conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find Sterling guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] The crimes were committed on December 11, 1993. Sterling was indicted on December 9, 1994, and a jury trial commenced on December 12, 1994. On December 19, the jury convicted Sterling of malice murder, felony murder, aggravated assault, two counts of kidnapping with bodily injury, kidnapping, and burglary. Sterling was initially sentenced to life for malice murder (in which felony murder merged by operation of law), twenty years for aggravated assault, two consecutive life sentences for kidnapping with bodily injury, and twenty years for burglary. Sterling filed a motion for new trial on January 9, 1995, and several amended motions subsequently. On November 14, 1995, the trial court granted the motion in part for resentencing. Sterling was resentenced on December 8, 1995, to life for malice murder (in which the felony murder conviction and one kidnapping with bodily injury conviction merged), a consecutive life term for aggravated assault (which merged with the second kidnapping with bodily injury conviction), and two twenty-year concurrent terms for the kidnapping and burglary convictions. On that same day, Sterling filed a notice of appeal, which was docketed in this Court on April 8, 1996. The case was orally argued on June 10, 1996.

2. In his first and second enumerations of error, Sterling asserts that the trial court erred in allowing the state to argue future dangerousness of Sterling. During the state's closing argument, the prosecutor stated, "[d]on't let my mistake let you put that killer on the street, because his brother still has his day in court. She's a dead woman." Sterling objected and the trial court responded, "[t]hat is improper argument I believe . . . I'll instruct the jury to ignore that," and subsequently denied Sterling's motion for a mistrial.

A defendant's probable future behavior can be argued by the state in the sentencing phase of a capital case because such behavior is directly relevant to the consideration of whether the defendant would remain a threat to society, *Brooks v. Kemp*, 762 F2d 1383, 1411 (11th Cir. 1985), and it relates to the defendant's punishment. See, e.g., *Fleming v. State*, 265 Ga. 541 (458 SE2d 638) (1995). That rationale is not present in a case where the jury decides only the guilt-innocence of the defendant. See, e.g., *Prather v. State*, 247 Ga. 789 (279 SE2d 697) (1981); *Mayo v. State*, 139 Ga. App. 520 (229 SE2d 16) (1976); and *Smith v. State*, 146 Ga. App. 428 (246 SE2d 442) (1978). Nonetheless, we held in *Vance v. State*, 262 Ga. 236 (416 SE2d 516) (1992), that a trial court properly allowed a prosecutor to argue future dangerousness in the guilt-innocence stage of a non-capital case. We note that the authorities cited for that holding involved the punishment stage of death penalty cases. See *Spencer v. State*, 260 Ga. 640, 653 (398 SE2d 179) (1990); *Ross v. State*, 254 Ga. 22 (326 SE2d 194) (1985), and *Hicks v. State*, 256 Ga. 715 (352 SE2d 762) (1987). Based upon the rationale for allowing an argument of future dangerousness, our reliance in *Vance* upon those cases was erroneous. Reconsidering our decision in *Vance*, we conclude that it was improperly decided because, as noted above, the rationale for permitting such argument in capital cases is not present in non-capital cases. Consequently, we hereby overrule *Vance* and its progeny.

Having overruled *Vance*, we conclude that the state's argument in this case regarding future dangerousness was improper. However, we conclude that, in view of the trial court's corrective measures in ruling that the argument was improper and in instructing the jury to disregard the statement, it did not commit reversible error in refusing to grant the motion for mistrial. See *Corbin v. State*, 81 Ga. App. 353 (58 SE2d 485) (1950).

3. In his third, fourth and fifth enumerations of error, Sterling contends that the trial court erred in denying his motion to examine the entire file referred to by a state witness during the witness's testimony. The witness reviewed the entire file the night prior to testifying, and referred to several pages of the file during his testimony. Upon Sterling's request to examine the entire file, the trial court ruled that the witness need make available to Sterling only the pages

that he referred to during testimony.

We held in *Johnson v. State*, 259 Ga. 403, 405 (383 SE2d 118) (1989), that if a witness used documents to refresh his memory after the inception of trial, then the cross-examiner is entitled to examine such documents. In the case before us, the trial commenced (i.e., the jury was sworn, see *McKeever v. State*, 196 Ga. App. 91 (395 SE2d 368) (1990) (cross-examiner not authorized to review documents used to refresh memory prior to jury being sworn)) before the witness reviewed the documents. Therefore, applying our decision in *Johnson*, Sterling should have been allowed to review the entire file used to refresh the witness's memory. However, because of the overwhelming evidence against Sterling, "it is highly probable that the error committed as a result of the denial of the motion did not contribute to the verdict and is, therefore, harmless. [Cit.]" *Johnson*, 259 Ga. at 405.

4. In his sixth, seventh, and eighth enumerations of error, Sterling asserts that the trial court erred in denying his motion in limine and allowing Chambers to comment on Sterling's character by stating that he had a prior arrest record and made his living selling cocaine. Further, Sterling argues, the trial court erred by allowing the state to present such evidence of similar transactions without giving notice pursuant to Uniform Superior Court Rule 31. Sterling's contentions lack merit. The statements regarding his prior arrest record and his involvement in drugs are not similar transactions to murder, kidnapping, assault, or burlary, the crimes that he was being tried for in this case. Therefore, the state was not required to give notice under Rule 31.

The state, when profferring Chambers's testimony, indicated that this evidence would be used to show motive. "Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. [Cit.]" *Johnson v. State*, 260 Ga. 457, 458 (396 SE2d 888) (1990). Chambers's testimony that she met Sterling through Douglas, that she would sometimes purchase drugs from Sterling on credit, and that Sterling demanded money from Douglas prior to killing him, is evidence of motive and was properly admitted. See *Hayes v. State*, 265 Ga. 1 (453 SE2d 11) (1995).

5. As his ninth and tenth enumerations of error, Sterling argues that the trial court improperly denied his motion for funds to obtain an out-of-state witness, Douglas's brother, who would have testified, in rebuttal to Chambers's testimony, that although Douglas called him on the night of the crime, he did not plead for money. The grant or denial of an indigent defendant's motion for funds is within the sound discretion of the trial court. *Berryhill v. State*, 249 Ga. 442 (15) (291 SE2d 685) (1982). We hold that the court did not abuse its dis-

cretion in denying the motion for funds since Sterling failed to establish the relevance of the proposed testimony. Chambers's testimony did not refute the proposed testimony of Douglas's brother, as she testified that she did not know with whom Douglas spoke, only that he had requested permission to call his brother.

6. In his eleventh enumeration of error, Sterling asserts that the trial court erred when it refused his motion to strike a juror for cause. Sterling argues that the juror was not qualified to serve on the jury because he indicated that his main concern was going on vacation, he was frustrated with the criminal justice system, and that if he were in the minority, he would change his vote solely for the purpose of getting the trial over with. Citing *Lively v. State*, 262 Ga. 510 (421 SE2d 528) (1992), Sterling argues that even though the juror subsequently stated that he would follow the court's instructions, he should have been stricken.

We conclude that this enumeration lacks merit. Because the record indicates that the juror subsequently stated that he would follow the court's instructions "not to surrender honest convictions just purely for the sake of achieving unanimity," we cannot conclude that "[the] opinion [of] the potential juror [was] so fixed and definite that the juror [would] be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." *Johnson v. State*, 262 Ga. 652, 653 (424 SE2d 271) (1993). Therefore, we hold that the trial court did not abuse its discretion in refusing to strike the juror for cause. *Wilcox v. State*, 250 Ga. 745 (301 SE2d 251) (1983).

7. In his twelfth enumeration of error, Sterling contends that the trial court erred in allowing two police officers to testify that, during their search of Sterling's home, Sterling's mother used offensive language toward the officers. Sterling asserts that such testimony was hearsay, irrelevant and prejudicial.

Upon the police officers' discovery of the telephone/answering machine, Sterling's sister stated that it was her brother's. Sterling's mother, cursing the officers who were confiscating the machine, claimed that it was hers and that they had "better get out of her [expletive] house." Contrary to Sterling's assertions, we conclude that these statements were not hearsay, as they were part of the res gestae of the search of Sterling's home. *Rollins v. State*, 202 Ga. App. 88, 89 (413 SE2d 261) (1991). The statements were clearly relevant and not unfairly prejudicial since Chambers had previously told the police that Rico Sterling had snatched Douglas's machine from the wall prior to his murder, and the statements by Sterling's family were inconsistent as to the ownership of the machine, which fit the description of Douglas's machine, found in their home.

8. In his thirteenth enumeration of error, Sterling contends that

the prosecutor improperly argued in closing that Sterling's question to potential jurors during voir dire regarding whether they possessed the belief that sometimes the guilty must go free was a concession of guilt. Although counsel enjoys "considerable latitude" when making closing arguments, *Crowe v. State*, 265 Ga. 582, 592 (458 SE2d 799) (1995), we find that such argument was improper because it was based upon information that was not in evidence. *Conner v. State*, 251 Ga. 113 (6) (303 SE2d 266) (1983). However, in light of the overwhelming evidence of Sterling's guilt and the high probability that the argument did not contribute to the jury's verdict, we conclude that the argument was harmless error. *Sears v. State*, 259 Ga. 671 (5) (386 SE2d 360) (1989).

9. In his fourteenth enumeration of error, Sterling contends that the trial court improperly allowed an audiotape of Chambers's statement to the police to be admitted into evidence during a police officer's testimony. Sterling asserts that because Chambers had not yet testified, the tape served only to bolster Chambers's subsequent testimony. Citing *Thornton v. State*, 264 Ga. 563 (449 SE2d 98) (1994), Sterling further contends that the tape was not admissible as a prior consistent statement because no in-court testimony had been elicited with which the tape could be consistent.

Sterling's contention that the tape was not admissible as a prior consistent statement is meritless. In *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985), this Court held that where the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement is admissible. Although Chambers had not yet testified nor had there been an attack on her credibility when the audiotape was admitted into evidence, Chambers subsequently did testify to statements with which the tape could be consistent. We cautiously point out that introducing such evidence prior to eliciting an in-court statement runs the risk that the witness's credibility is never attacked and that the evidence is subsequently rendered inadmissible. However, in the case before us, Chambers's credibility was eventually attacked and the tape was properly admitted as a prior consistent statement. See *Thornton v. State*, 264 Ga. at 566.

10. In his fifteenth enumeration of error, Sterling contends that the trial court erred in admitting duplicative and irrelevant photographs of the deceased victim's body, and in admitting autopsy photographs after the state of the body had been changed by the authorities.

At trial, Sterling objected to three photographs: one photograph of the body at the scene on the grounds that it was gruesome, and two photographs of the body after autopsy on grounds that the state of the body had been changed by authorities. Sterling did not make

specific objections to these photographs on the grounds of duplicity, thus this claim was not preserved for appellate review. *Mundy v. State*, 259 Ga. 634 (5) (385 SE2d 666) (1989).

Upon reviewing the challenged photographs, we determine that the photograph of Douglas's body at the scene was relevant to show the location and condition of the body when found (*Meeker v. State*, 249 Ga. 780 (294 SE2d 479) (1982)), and the autopsy photographs, which neither depicted autopsy incisions or changes to the body (*Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983)), were relevant to show the bullet wound. *Meeker*, supra.

11. In his sixteenth enumeration of error, Sterling argues that the trial court erred in denying his motion to suppress items taken from his home pursuant to a search and that the search warrant was improperly issued since there was no reason to believe that the items would be found in Sterling's home.

The state argues that Sterling does not have standing to challenge the search because his mother owned the residence and he "sometimes lived" there. The record reveals, however, that Sterling occupied a bedroom in the home, did not reside at another location, and was believed to have lived there by others, namely Chambers. Because the state has failed to sufficiently support its claim that Sterling did not live at the residence, we find that he has standing to challenge the search. *Ferron v. State*, 216 Ga. App. 456 (454 SE2d 637) (1995).

Although Sterling has standing to challenge the search, we hold that police officials had probable cause to issue a search warrant. Based upon the proximity of his home to the crime scene, Chambers's statement to the police that Sterling was one of the assailants, and Sterling's nearness to both the crime scene and his home, it was reasonable for the police to believe that his home harbored evidence of the crime. *Murphy v. State*, 238 Ga. 725 (1) (234 SE2d 911) (1977); *Duckworth v. State*, 246 Ga. 631 (3) (272 SE2d 332) (1980).

12. In his seventeenth enumeration of error, Sterling contends that the trial court erred, under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) (admission of non-testifying co-defendant's statement in a jury trial implicating the defendant violates the confrontation clause), in admitting his brother Rico's statement to police against him. Upon his arrest, Rico stated that he and Sterling had gone to his aunt's house on the night of the crime, but that, upon discovering that she was not at home, they began to walk back to their own house. At this point, the police approached them and they began to run.

Sterling's assertion that a *Bruton* violation occurred fails since his trial was severed from Rico's, and Rico's statement did not implicate him in any manner. The statements were properly admitted as

statements by a co-conspirator under OCGA § 24-3-5, which allows the admission against a co-conspirator of the other co-conspirator's statement made during the concealment stages of the criminal activity.

13. In his final enumeration of error, Sterling contends that the trial court erred in allowing the state to comment in front of the jury upon previous court rulings. Specifically, Sterling asserts that, upon concluding inquiry of a witness, the prosecutor stated that he had no further questions for the witness "subject to being able to recall him to go into a few matters that we have already discussed at the bench I can't go into right now." Sterling contends that this comment denied him a fair trial because the jurors were left with the belief that there was other evidence beneficial to Sterling that had been excluded. We disagree. The prosecutor's comments were not susceptible to that interpretation; the statement indicated to the jury that the witness would be recalled subsequently to testify about another matter, which he was. With this, we find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 1996.

*Potts & Badaruddin, Shandor S. Badaruddin, James H. Potts II, Wolfe & Steel, Brian Steel,* for appellant.

*Lewis R. Slaton, District Attorney, Kirby Clements, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Allison Goldberg, Assistant Attorney General,* for appellee.